2004 OK CR 20
**John David DUTY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. D 2002–1367.**

Court of Criminal Appeals of Oklahoma.

April 23, 2004.

---

**168.** *See* Court's analysis of DeRosa's Propositions VII and VIII *supra.*

James Bowen, Indigent Defense System, Sapulpa, OK, Attorneys for Defendant at trial.

Jim Bob Miller, District Attorney, Richard Hull, Assistant District Attorney, McAlester, OK, Attorneys for the State at trial.

James Bowen, Indigent Defense System, Sapulpa, OK, Attorneys for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, David M. Brockman, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## OPINION

LILE, Vice Presiding Judge.

¶1 Appellant, John David Duty, was charged with First Degree Murder in violation of *21 O.S.2001, § 701.7*, in Case No. CF–2002–243, in the District Court of Pittsburg County, on June 4, 2002. The State filed a Bill of Particulars alleging four aggravating circumstances: "the defendant was previously convicted of a felony involving the use or threat of violence to the person;" "the murder was especially heinous, atrocious or cruel;" "the murder was committed by a person while serving a sentence of imprisonment on conviction of a felony;" and "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." [1]

¶2 Duty indicated that he wished to enter a guilty plea to the crime and the Bill of Particulars; therefore, the Honorable Steven Taylor, District Judge, ordered a competency evaluation pursuant to *Fluke v. State*, 2000 OK CR 19, 14 P.3d 565, and *Grasso v. State*, 1993 OK CR 33, 857 P.2d 802. A physician at the Carl Albert Community Mental Health Center conducted an initial competency examination. The results of the evaluation conclude that Duty was competent. [2]

¶3 After receiving the results of this examination, Duty's counsel requested physicians from Eastern State Hospital complete

1. 21 O.S.2001, § 701.12(1), (4), (6), & (7).

2. Duty was able to appreciate the nature of the charges against him; able to consult with his lawyer and rationally assist in the preparation of his case; Duty does not require treatment, but if released, he would pose a significant threat to the life or safety of himself or others.

an additional independent competency evaluation. The trial court granted the request, ordering that the evaluation answer the questions posed in *22 O.S.2001, § 1175.3* (E). After the evaluation, the physicians concluded that Duty was competent. The physicians, in a thorough report indicated that Duty understands that he is certain to receive the death penalty if he goes to trial and he understands the method of execution in Oklahoma. The report indicates that Duty understands his attorney's role is to see that procedural issues are in order so that his desired sentence of death will be carried out.

¶ 4 Duty finds death a better option than being locked up for the rest of his life. The report indicates that Duty has never suffered from a mental disorder. However, the report indicates that if Duty were released he would be a danger to others because of his admitted belief that he would kill again. The report indicates that Duty understands that by entering a guilty plea he is waiving appeal rights.

¶ 5 After receiving the report, the trial court scheduled a post evaluation competency hearing. On October 28, 2002, a hearing has held. The trial court reviewed the competency evaluation reports after the parties stipulated to the results. Duty testified in his own behalf and was examined by the trial court. The trial court also questioned Duty's counsel about Duty's competence. The trial court concluded that Duty "is competent on all those issues and all the points raised by the statute involved and by the case law involved."

¶ 6 After the hearing, the trial court proceeded to formal arraignment, and Duty entered his guilty plea to the crime before Judge Taylor. Judge Taylor conducted a thorough plea hearing and accepted the guilty plea finding that Duty understood the nature and consequences of his plea to the crime First Degree Murder and finding that there was sufficient factual basis for the plea. The trial court then allowed Duty to enter a guilty plea to the Bill of Particulars. The trial court accepted the plea after finding that Duty understood the consequences of the plea and after finding that there was sufficient factual basis for the aggravating circumstances. Judge Taylor set punishment at death. Duty indicated he understood his right to appeal and that he knew that this Court would review the sentence pursuant to mandatory sentence review.

¶ 7 Duty did not move to withdraw his plea; therefore, he has waived all but the statutorily mandated sentence review pursuant to *21 O.S.2001, § 701.13* and Rule 9.4, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2003). *See Wallace v. State*, 1995 OK CR 19, 893 P.2d 504, 510. This Court will determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and ... whether the evidence supports the ... judge's finding of a statutory aggravating circumstance...." *21 O.S.2001, § 701.13* (C). This Court will also determine "whether Appellant is competent and has the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence." *See Grasso*, 1993 OK CR 33, 857 P.2d at 805.[3] Appellate Counsel has filed a brief in Duty's behalf on

---

**3.** In three prior cases where an appellant has "volunteered" for the death penalty, this Court has remanded the case for an evidentiary hearing and/or further competency evaluations. The three prior cases are distinguishable from this case.

*Grasso v. State*, 1993 OK CR 33, 857 P.2d 802, was the first case where this Court had an opportunity to review a waiver of the statutory right to appeal a death sentence. We held that a trial court must make a determination of petitioner's competency and his capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence. Because, the trial court had not made that determination, we remanded the case for a judicial determination of that issue.

The next case from this Court was *Wallace v. State*, 1995 OK CR 19, 893 P.2d 504. This Court summarily remanded the case for an evidentiary hearing to determine whether the appellant had in fact waived all appeals except his mandatory sentence review, even though, the appellant had signed a waiver indicating that he did not want to appeal his conviction. The trial court had not made a determination that Wallace was competent to make that decision.

In the third and most recent case, *Fluke v. State*, 2000 OK CR 19, 14 P.3d 565, Fluke requested a determination of competency, which was denied by the trial court. Therefore, this Court remanded the case for an independent competency evaluation for the purpose of aiding the trial court in determining: "was Fluke competent when he

Capital Mandatory Sentence Review. Issues not relevant to the mandatory sentence review are also included in the brief. The brief and Duty's mandatory sentence review are now before the Court.[4]

¶ 8 On December 19, 2001, Duty talked his cellmate, Curtis Wise, into acting as a hostage so Duty could be moved from the Disciplinary Unit to Administrative Segregation. According to Duty, Wise allowed Duty to tie his hands behind his back. But, after doing so, Duty strangled him to death. Duty stated that Wise struggled for his life and it took a while.

¶ 9 Our mandatory sentence review requires us to determine whether the evidence supported the aggravating circumstances. The fact finder need only to find the existence of one aggravating circumstance beyond a reasonable doubt in order for the death penalty to be considered. *Torres v. State*, 2002 OK CR 35, ¶ 6, 58 P.3d 214, 215.

¶ 10 In Proposition one, Duty states that the evidence was insufficient to establish the aggravating circumstance alleged in support of imposition of the death penalty. However, in this proposition, Duty attacks the constitutionality of the "continuing threat" aggravating circumstance. This issue is not a part of the mandatory sentence review; therefore, Duty has waived review of this issue. Suffice it to say that this Court has consistently rejected this claim and we find no reason to revisit this issue here.[5]

¶ 11 To support the continuing threat aggravating circumstance, "the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that [the] threat would continue

to exist in the future." *Turrentine v. State*, 1998 OK CR 33, ¶ 77, 965 P.2d 955, 977, *cert. denied*, 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998).

¶ 12 Duty killed his prison cellmate. During the plea hearing, Duty was adamant about the fact that he would kill again. He stated that he would kill a prison guard or another inmate if things did not go his way. The evidence supported this aggravating circumstance. Basically, Duty admitted that he would kill in order to get his way, thus he is a continuing threat to society.

¶ 13 In Proposition two, Duty argues that the aggravating circumstance requiring the murder to be especially heinous, atrocious or cruel is unconstitutional and that the evidence does not support the finding of its existence. The especially heinous, atrocious or cruel aggravating circumstance applies to those murders that are preceded by torture or serious physical abuse. *McElmurry v. State*, 2002 OK CR 40, ¶ 118, 60 P.3d 4, 28. We have consistently stated that under this definition, this aggravating circumstance is constitutional. *Le v. State*, 1997 OK CR 55, ¶¶ 41–45, 947 P.2d 535, 552–53. Evidence supporting this aggravating circumstance consisted of Duty's own statements that Curtis struggled for his life and it took a while for him to become incapacitated. This is sufficient.

¶ 14 In Proposition three, Duty claims that the prior violent felony aggravating circumstance is unconstitutional because Duty's prior violent felonies were too remote in time to be used to support this aggravating circumstance, and because this aggravator was duplicitous of the continuing threat aggravating circumstance.

entered his guilty pleas and waived presentation of mitigation evidence during the *Wallace hearing*, and is he presently competent to waive his capital direct appeal."
In this case, the trial court's conclusion that Duty "is competent on all those issues and all the points raised by the statute involved and by the case law involved" encompassed the waiver of the right to appeal which was explained during the proceedings and the second competency examination. The competency evaluations and conclusions of the trial court, in this case, clearly indicate that Duty is competent and capable of making the decision to waive his right to appeal;

therefore, further hearings and evaluations are unnecessary.

4. Because Duty has waived his right to appeal by failing to move to withdraw his guilty plea, and after having been found competent to waive his right to appeal, no oral argument will be scheduled in this case. Having waived his right to appeal, Duty has also waived his right to oral argument pursuant to *21 O.S.2001, § 701.13* (D). Duty is entitled to Mandatory Sentence review only.

5. *McElmurry v. State*, 2002 OK CR 40, ¶ 84, *60 P.3d 4*, 24–25.

¶ 15 In *Bernay v. State,* 1999 OK CR 37, ¶ *76,* 989 P.2d 998, 1016 we held that prior violent felony convictions nearly forty years old were not barred as too remote to support this aggravating circumstance. We follow that holding here.

¶ 16 As far as being duplicitous, we addressed this issue in *Green v. State,* 1985 OK CR 126, ¶ *26,* 713 P.2d 1032, 1040–41, *cert. denied* 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986), *overruled on other grounds by Brewer v. State,* 1986 OK CR 55, ¶ *51,* 718 P.2d 354, 365, n. 1, and found that the aggravating circumstance was not duplicitous as applied. The same is true here. One aggravating circumstance focuses on a defendant's pattern of violent criminal history while the other focuses on his future conduct. *Green,* 1985 OK CR 126, ¶ 26, 713 P.2d at 1042.

¶ 17 The fourth aggravating circumstance, that the murder was committed by a person while serving a sentence of imprisonment on conviction of a felony, is undisputed. The facts indicate that Duty was serving a sentence life imprisonment for the felony crime of Robbery or Attempted Robbery in Case No. CF–79–75 from the District Court of Jackson County, Oklahoma and sentences of life imprisonment for the felony crimes of First Degree Rape and Shooting with Intent to Kill in Case Nos. CF–78–12 and CF–78–13 from the District Court of Tillman County, Oklahoma. This aggravating circumstance is satisfied.

¶ 18 Duty waived his right to present mitigating evidence in this case and the trial court followed the procedures outlined in *Wallace v. State,* 1995 OK CR 19, 893 P.2d 504, *cert. denied,* 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160, and determined that Duty understood the consequences of waiving the presentation of mitigating evidence.

¶ 19 At the conclusion of the proceedings, the trial court sentenced Duty to Death. We find that there was sufficient evidence from which the trial court could have found the existence of the four aggravating circumstances. We further find that the death penalty was appropriate in this case; it was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

¶ 20 In Proposition four, Duty argues that the United States Supreme Court decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) requires that the aggravating circumstances be charged by Information or Indictment and that they be proven at Preliminary Hearing. This proposition was not raised at any time during the trial court proceedings. Furthermore, this proposition is not related to mandatory sentence review. Therefore, review of this issue is waived.[6]

· ¶ 21 Pursuant to *Grasso v. State,* 1993 OK CR 33, 857 P.2d 802, 805, we have determined that "Appellant is competent and has the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence." The thorough competency examination by the physicians of Eastern State Hospital clearly indicates that Duty has the capacity to understand what he is doing and to knowingly and intelligently waive his appellate rights. Duty is a long time prison resident who sees death as a better alternative to life without parole. The killing of his cellmate was a tool for his desire to die. Although it seems that Duty is using the State to assist him in suicide, the death penalty is clearly indicated in this case despite Duty's personal wishes.

¶ 22 We find no irregularities warranting reversal of Duty's conviction and sentence of death; therefore, the Judgment and Sentence of the trial court is, hereby, **AFFIRMED.**

JOHNSON, P.J., LUMPKIN and STRUBHAR, JJ., concur.

CHAPEL, J., concur in results.

---

6. This specific issue has been addressed and rejected by this Court in other cases. See *Primeaux v. State,* 2004 OK CR 16, 88 P.3d 893, &

*Johnson v. State,* 1982 OK CR 37, ¶ 10, 665 P.2d 815, 819.